(No. 91-CC-1942–)

CHARLES ROBINSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 6, 1994.*

CHARLES ROBINSON, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (MARINA POPO-VIC, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

This is a tort claim filed by inmate Charles Robinson on January 14, 1991. Claimant alleges he was injured when guards used unnecessary force to put handcuffs on Claimant, squeezed the handcuffs too tightly, viciously twisted Claimant's chain, and further that he was then refused medical attention.

Claimant, Charles Robinson, was an inmate at the Joliet correctional center. On December 12, 1990, a shakedown was performed on Claimant's cell. Correctional officers Jones and Briggs indicated they found alcohol and other contraband in Claimant's cell. Claimant claims that he was injured by the officers and then denied medical attention.

Claimant was taken to the hospital on the morning of December 13, 1990. Claimant seeks $12,500 in damages.

At the time of trial, Claimant had been in prison for 23 years. Claimant testified that he believed that a lieutenant did not like him because he had two disciplinary tickets dismissed. Claimant was in protective custody cell 130. According to Claimant, the lieutenant came to his cell and said he had orders to shake Claimant's cell down. Claimant asserted that this lieutenant did not like him and had threatened him. Claimant had gone to the warden to try to "get this man off my back." On December 13, 1990, Claimant had a lot of fruit in his cell. He was going to make wine but had not done so yet. The guards, during the shakedown, took his fruit and an ashtray. The guards then tore up his cell. During this time, Claimant was handcuffed. Claimant testified the guards cursed him. They put him back into his cell. Claimant complained the handcuffs were too tight. He put his hands

through the bars. The officer vilified Claimant. When the officer took the handcuffs off, Claimant's hand was cut and his arm was swollen. Claimant testified he was in great pain. Claimant further testified the guard refused to take him to the hospital. The lieutenant threatened "to get" Claimant. Claimant testified that even though he was hurt and was cursed at, he did not attack the officers.

Claimant filed a grievance but the grievance was denied. Claimant testified that all of the disciplinary tickets issued by Lieutenant Van against Claimant were dismissed by the warden. This is unusual in the prison system and Claimant believes that is why the lieutenant hurt him.

Claimant did receive a ticket for the contraband taken from his cell on December 12, 1990. Claimant was handcuffed prior to the shakedown and remained handcuffed throughout the proceeding. Claimant testified he was screaming during the whole shakedown. Claimant received only a mild penalty for the contraband in his cell.

Claimant was taken to the hospital and given medical treatment when the next shift came on the next day. The shakedown was done at 7:30 p.m. Claimant went to the hospital shortly after 12:00 when they did the prisoner count. Claimant had no broken bones. He did have pain for about a week. His hand was swollen and he could not use it. He could only work with his left hand. Apparently, Claimant suffered no permanent injury. He does claim some shaking occurs in his arm when he writes. However, Claimant had arthritis and continues to have arthritis not related to the incident. Claimant seeks damages solely for pain and suffering.

The medical records indicate Claimant had some swelling and pain in his right hand over the wrist. The

pain and swelling appear to have resolved on or about December 19, 1990.

Inmate Brian Dugan testified for the Claimant. Mr. Dugan was in cell 128. He observed the guards shake down Claimant's cell by using a hand-held mirror. He heard Claimant say that the handcuffs were too tight. Claimant's voice was very loud. He heard Lieutenant Van use the word "nigger." He saw Lieutenant Van reach in the cell and he heard Claimant scream. He then saw Lieutenant Van with his mace out although the lieutenant never used the mace. Claimant was handcuffed with his hands behind his back and with his hands coming out the cell door in the tray slot. Mr. Dugan was 15 to 20 feet away. He was using a pocket mirror. He could not see into Claimant's cell. He could see the lieutenant and the other officer in front of the cell and he could see what those two did. He did see them take things from Claimant's cell and he heard Claimant "got busted for hootch." They took things from Claimant's cell that Claimant purchased in the jail. They took some round decorative balls made out of tissue paper from Claimant's cell and Claimant was yelling about that. Claimant appeared upset because they were taking his property. However, it appeared Claimant followed the officers' orders and Claimant did not threaten anyone. He heard Claimant ask to go to the hospital and Lieutenant Van refused to take him down to the hospital. Witness Dugan saw Claimant when he returned from the hospital and saw that Claimant's wrist was swollen.

Lieutenant Jerome Van testified that during a shakedown, it is standard procedure to handcuff each prisoner whose cell is to be searched. The inmate is handcuffed to the bar by the cell where he can oversee the shakedown that is taking place. He has received training in properly performing shakedowns at the academy in Springfield.

Lieutenant Van supervised the shakedown of Claimant's cell. He was aware of Claimant prior to the shakedown. This particular shakedown was a routine shakedown ordered by the superintendent. He testified they approached Claimant's cell and announced the shakedown. The Claimant became very belligerent. The Claimant was cuffed inside the cell through the opening, the cell door was opened, the Claimant came out, the Claimant was pat searched, and then cuffed to the bars by the cell so he could observe the shakedown. They then proceeded to shake down the cell. A considerable amount of homemade hootch and other contraband was found. After the search, Claimant was placed back in the cell. Claimant became belligerent again and told the officers he was going to mess up the lieutenant as soon as the handcuffs were off. Claimant went to the back of the cell and refused to come to the front of the cell to have his cuffs removed. Claimant continued to threaten the officers. When Claimant did come to the front of the cell, the lieutenant ordered the cuffs removed and he stood back with his mace ready because Claimant kept saying he was going to hit somebody once the cuffs were removed. The mace was never used. Lieutenant Van testified he never heard Claimant complain about the cuffs being too tight, and after the shakedown he did not see anything out of the ordinary regarding Claimant's wrists. He testified Claimant did not request medical attention. Lieutenant Van also testified he heard a rumor that Claimant was going to set him up. The lieutenant only pulled the mace after Claimant was back in his cell with the door locked.

Corrections officer Bruce Briggs testified that he was also present at the shakedown of Claimant's cell. He testified that Claimant was very vocal, swearing, yelling and cussing. Claimant was slow about coming to the cell

door to have his cuffs removed after the shakedown. He did not recall any problems after the shakedown. Officer Briggs took the handcuffs off. He did not hear Claimant claim the cuffs were too tight, that he wanted them loosened, or that his wrists were hurting. Officer Briggs testified Claimant swore at the officers and threatened them. However, he did admit it was procedure for an inmate to go to segregation for doing such things. Claimant was not sent to segregation. Officer Briggs also admitted Claimant did say Lieutenant Van was out to get him while Claimant was in his cell.

The State of Illinois owes a duty to prison inmates to provide them with a safe place to live. (*Holt v. State* (1990), 43 Ill. Ct. Cl. 195.) The State also owes prison inmates the duty to provide them reasonable medical care. (*Russell v. State* (1990), 43 Ill. Ct. Cl. 295.) The Court will only impose liability upon the State for the criminal acts of third parties where the State's agent participated in the alleged act or where the State's agent anticipated or should have anticipated the criminal attack. (*Daugherty v. State* (1991), 43 Ill. Ct. Cl. 317.) This Court has also held that correctional officers may use such force as is reasonably necessary to restrain an inmate to protect all parties from injury. The Claimant has the burden of proving the State's agents were negligent or used excessive force to prevail. *Simmons v. State* (1991), 44 Ill. Ct. Cl. 304.

To establish a claim for failure to provide adequate medical care, Claimant must establish through expert testimony that the State breached its duty to him. As no expert testimony was presented and because Claimant's alleged denial of medical treatment was only a few hours with no attendant permanent injuries, this portion of Claimant's claim must fail.

Whether the State's agents used excessive force thereby injuring Claimant's wrist is a factual inquiry involving the credibility of the witnesses. We have carefully reviewed the testimony presented to the Commissioner. The testimony is completely contradictory. Claimant, bolstered by his witness and the medical records, shows that Claimant was injured in a manner which likely came from handcuffs being applied too tightly through excessive force. The guards say nothing happened. We find that the testimony of Claimant and his witness has the ring of truth thereto. Claimant was not seriously injured and has no permanency. It is significant that the lieutenant only pulled out his mace when Claimant was back in his cell, that officer Briggs admitted Claimant said Van was out to get him, that Claimant did have a documented injury, that Claimant was not sent to segregation for the acts the Respondent's witnesses claimed he did, and that Claimant's witness testified and was not impeached in any way.

Based on the foregoing, we award Claimant $750 in full satisfaction of his claim.