(No. 88-CC-3915-)

HARVEY DUERST, CLAIMANT, V. THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 29, 1998.*

BEGER, FERGUSON & ASSOCIATES (JERROLD R. BEGER, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (GARY M. GRIFFIN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant filed his complaint sounding in tort on April 28, 1988. The cause proceeded to trial on an amended complaint. Claimant has alleged that Illinois State Trooper Mark Fritz fractured Claimant's neck when he used excessive force to effect the arrest of Claimant on April 30, 1987, in Winnebago County, Illinois.

### The Facts

On the evening of April 30, 1987, the paths of Harvey Duerst and Trooper Mark Fritz of the Illinois State Police crossed in an area of southern Winnebago County. When Mr. Duerst left that location, he was under arrest, in the custody of Trooper Fritz, and was suffering from fractured vertebrae in his cervical spine. This claim is brought by Mr. Duerst for those injuries. How Claimant suffered those injuries is the subject of this cause of action, and whether Trooper Fritz violated the standards on the use of force is the pivotal issue in resolving this claim.

In April of 1987, Harvey Duerst was a 43-year-old assembly worker at the Chrysler Corporation plant in

Belvidere, Illinois. He was married to Marcia Duerst, his wife since 1969. He resided in Rockford, Illinois, an area to which he had moved in 1966.

Mark Fritz, on April 30, 1987, was an Illinois State trooper whose responsibilities included the patrol of the southern area of Winnebago County. He had been a cadet with the Illinois State Police between June of 1986 and October of 1986. Prior to that time, he had been a deputy sheriff. On April 29, 1987, Trooper Fritz's shift began sometime after 11:00 p.m. At approximately midnight, Trooper Fritz was driving at the intersection of Blackhawk Road and Mulford Road. Trooper Fritz observed a vehicle partially stopped on Mulford. He also observed Claimant around that motor vehicle. There were no other vehicles or pedestrians in the area, which would most accurately be described as rural. Trooper Fritz activated his emergency light after he turned the corner but before he pulled up behind Mr. Duerst's vehicle. Claimant moved his vehicle off the road at that time.

While there are many conflicts between the testimony of the Claimant and the trooper, there are certain undisputed facts which can be ascertained from the testimony. After a period of observation of Mr. Duerst and a conversation with him, the trooper required Mr. Duerst to do what are commonly referred to as field tests for sobriety. Claimant failed the field tests. Additionally, Trooper Fritz asked for the Claimant's driver's license. After satisfying himself that he possessed probable cause, the trooper informed the Claimant that he was being arrested for driving under the influence of alcohol and then placed the Claimant in the Illinois State Police car. We agree that Trooper Fritz had abundant probable cause to arrest Claimant for driving under the influence of alcohol. Up to that point, the Claimant had cooperated with the officer

and complied with the requests made. After the arrest, the tenor of the conversation was more adversarial and the Claimant became anything but cooperative. In the squad car, the Claimant tried to persuade the officer not to arrest him but failed. In doing so, Claimant mentioned a prior DUI arrest. The officer informed the Claimant that he would have to be searched for weapons and he proceeded to open the passenger door of the squad so that the Claimant could exit. The Claimant decided, however, that the officer did not need to conduct the search since the Claimant had already informed the officer that Claimant possessed no weapons. It was this error in judgment on the part of Claimant which led to the physical altercation between the Claimant and the trooper. The Claimant refused the officer's requests to exit the squad car of his volition. After several requests, the officer finally grabbed the collar of the Claimant's coat and pulled Claimant out of the squad car. The Claimant was forced to lean against the car at the rear passenger door.

From the point that Claimant was leaning against the squad car, the testimony is in conflict. There is conflict as to whether Claimant pushed himself away from the vehicle or if the officer intentionally took the Claimant to the ground. There is conflict in the testimony as to the Claimant's level of cooperation while he was being searched, but the more reasonable conclusion is that his cooperation did not increase once he was forcibly removed from the vehicle. The Claimant admits pushing the officer's arm away during the search and in reaction to the touching of his genitals. The officer testified that the Claimant was so uncooperative that the search had to be discontinued. At this stage, because of the Claimant's attitude and the conditions, either Trooper Fritz made the decision to ground the Claimant, a tactic which makes it easier to handcuff an uncooperative suspect, or the Claimant

pushed off the vehicle and the two fell to the ground. Again, the Claimant's version is contrary to the officer's as to how he ended on the ground. In evaluating the credibility of the Claimant, it is difficult to disregard the conclusion of those medical personnel at Swedish Covenant Hospital who noted that the Claimant was acutely intoxicated when he arrived there. Additionally, the hospital testing revealed that the Claimant had alcohol levels in his blood of 311 milligrams per deciliter. These results were included in the medical records admitted as part of Dr. Ayers' testimony. Regardless of an individual's tolerance, this type of intoxication would impair a person's physical and mental abilities to some extent.

In trying to determine how the Claimant landed on the ground, it is important to remember that the officer was trying to impose physical control over an intoxicated, uncooperative male who would not allow himself to be searched in a rural, desolate location. While intoxication does not render one's legal protections meaningless, the dilemma it creates in the eyes of the arresting officer certainly weighs on the type of force necessary to obtain that control. If the Court adopts Claimant's version of the events, the Claimant urges that less aggressive options were available to Trooper Fritz in this confrontation. He discusses a verbal warning to the Claimant before being taken down, but it is obvious that such a measure might very well be counter-productive with an uncooperative suspect. Under section 7—5 of the Criminal Code (720 ILCS 5/7—5), a peace officer's use of force is codified. How much force an officer can use and when it can be used is delineated. The statute states:

"Peace officer's use of force in making arrest. (a) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened * * * force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to

defend himself or another from bodily harm while making the arrest. However, he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or such other person, or when he reasonably believes both that:

(1) Such force is necessary to prevent the arrest from being defeated by resistance or escape; and

[b] * * * justified in using if the warrant were valid, unless he knows that the warrant is invalid."

It is the Claimant's position that, since he suffered a fractured cervical vertebrae, the officer's use of force was excessive since he was only being arrested for misdemeanor offenses. However, that analysis presumes that the force utilized was "likely to cause death or great bodily harm." Under the circumstances present in this case, that is not true. Force likely to cause death or great bodily harm does not normally include forcing or even throwing a person to the ground in an attempt to control him. The Claimant's injury no doubt did occur while being thrown, forced or falling to the ground. The mechanics of the injury seem to suggest that the Claimant's head hit the ground first, but in a struggle, that is not surprising. The Court cannot conclude that the officer intended to cause such a severe injury to the Claimant, nor that it was likely that the take-down, if that is what occurred, would result in such a severe injury. To characterize the fracture of the Claimant's cervical vertebrae as the unfortunate product of this scenario in no way diminishes the nature of the injury or its consequences. Claimant was forced to endure a long and painful recuperative period which would be compensable under different circumstances. There is, however, no credible evidence from which a trier of fact can conclude that the trooper intentionally abused or battered Mr. Duerst or used force likely to cause great bodily harm during the arrest process or that the trooper was negligent.

Again, even if the Court accepted Claimant's version of events regarding the fall to the ground, we find that

the force utilized by the officer cannot be said to have been excessive. It was not the type of force which was likely to cause death or great bodily harm, and because of the resistance encountered, it was justified at the time.

## The Law

To prevail, the Claimant has the burden of proving by a preponderance of the evidence that the State's agent was negligent or used excessive force. (*Simmons v. State* (1991), 44 Ill. Ct. Cl. 304; *Robinson v. State* (1994), 47 Ill. Ct. Cl. 364.) As heretofore stated, the trooper did not use force likely to cause great bodily harm. The trooper was not negligent and did not use excessive force under the totality of the circumstances.

The Court must also consider the credibility of the witnesses. (*Jones v. State* (1994), 46 Ill. Ct. Cl. 324.) The testimony of the Claimant and trooper are diametrically opposed on most of the crucial evidence in the case. We find the testimony of the trooper to be more credible. The trooper was acting professionally and with restraint. The proximate cause of Claimant's injuries are the Claimant's own conduct in failing to obey the lawful orders of the trooper when asked to exit the car. The trooper's credibility is enhanced by the fact that instead of instituting a costly tow of Claimant's vehicle, he let Claimant choose a friend to come and retrieve the vehicle. Knowing that a private citizen was on the way to obtain Claimant's car keys at the scene, it is more probable than not that the trooper was not going to use excessive force on Claimant.

We find, based on the evidence, that Claimant was intoxicated, that he was upset that he was being arrested for driving under the influence of alcohol, could not talk his way out of it, and refused to step out of the trooper's vehicle when asked several times. Claimant admits he tried to talk his way out of the DUI arrest and that he did

not abide by the trooper's order. Claimant's excuse that he was startled and didn't think the trooper should have to search him is not accepted by the Court as a reason not to follow the officer's lawful order. Claimant must follow all lawful orders of the officer or he is resisting or obstructing the officer. Claimant's conduct started the process that led to his injury.

We further find that Claimant resisted the pat-down search of the trooper. A trooper has the right to search an arrestee incident to an arrest. An arrestee has no right to resist or obstruct a police officer making a lawful arrest. (720 ILCS 5/7—7.) Claimant resisted Trooper Fritz. Under all of the circumstances and in dealing with this intoxicated, resisting arrestee, this trooper acted reasonably.

We find that the trooper did not intend to use, nor did he use, excessive force. The result was unfortunate but was not intended nor the necessary result of the force used. Claimant's conduct was the proximate cause of his injury.

Based on the credible evidence, this Court finds that Claimant has failed to prove by a preponderance of the evidence that the Respondent was negligent or used excessive force during the arrest of Claimant. For the foregoing reasons, it is the order of the Court that Claimant's claim be and hereby is denied.